**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SHELTON OLIVER, individually and on behalf of all others similarly situated,** | |
| **Plaintiffs,** | **Civil Action No. 17-12979 (CCC)** |
| **v.** | |
| **BMW OF NORTH AMERICA, LLC,** | |
| **Defendant.** | **OPINION** |

**FALK, CHIEF U.S.MJ.**

This is a class action complaint filed on behalf of a nationwide class and state subclasses arising out of Plaintiffs' claim that Defendant BMW North America, LLC ("BMW") knew Coolant Pumps installed in a number of different class vehicle models (the "Settlement Class Vehicles" or "Class Vehicles") were defective and likely to fail well before any service or maintenance should be necessary.  Plaintiffs contend that BMW concealed this information and misrepresented that the Settlement Class Vehicles were safe, reliable, and fully protected by an extensive warranty.   After intense settlement negotiations, a class settlement has been reached that both parties contend is fair, reasonable, and adequate to the proposed class.

Presently before the Court is the joint motion for final approval of the parties' settlement, and Plaintiffs' motion for the approval of attorney's fees, expenses, and service awards to the class representatives.  [ECF Nos. 34, 71-72.]  The papers submitted have been carefully considered, as have objections to the settlement.  A Fairness Hearing was held on February 18,

2021. [ECF No. 77.]  For the reasons below, the Court **GRANTS** the motion to approve the settlement, and **GRANTS** Plaintiffs' request for an award of attorney's fees, expenses, and class representative service awards.[1]

## I.   BACKGROUND[2]

## A.   The Parties

Plaintiffs are Shelton Oliver, Donnie Baker, and Khader Mohiuddin (hereinafter, "Plaintiffs" or "Class Representatives"), on behalf of themselves and all other current and former owners and lessees in the United States of certain U.S. specification BMW vehicles registered and operated in the United States, the District of Columbia, and Puerto Rico.  Defendant is BMW.  The impacted vehicles are:[3]

| MODEL YEARS | MODELS |
|---|---|
| 2008-2013 | 135i |
| 2007-2013 | 335i, 335i xDrive, 335is Convertible |
| 2008-2016 | 535i, 535i xDrive, 535i Active Hybrid |
| 2012-2017 | 640i, 640i xDrive |
| 2010-2015 | 740i, 740Li |
| 2012-2015 | X1 3.0si |
| 2011-2017 | X3 xDrive |

---

[1] On August 3, 2020, the parties' executed the form labeled "Notice, Consent, and Reference of a Dispositive Motion to a Magistrate Judge," providing consent for the Undersigned to decide the Motion for Final Approval and Motion for Attorneys Fees to be filed in this case.

[2] This Opinion is drawn in part from the parties' motion.  Direct citations are at times omitted for purposes of ease of readership.

[3] These vehicles are referred to as the "Class Vehicles."

| 2015-2018 | X4 xDrive, X4 M40i |
| 2007-2013 | X5 3.0si, X5 xDrive 30i, X5 xDrive |
| 2008-2019 | X6 sDrive, X6 xDrive |
| 2009-2016 | Z4 sDrive |

**B.**     **The Operative Complaint & Procedural History**

The Operative Complaint was filed on December 12, 2017, and contains 8 counts on behalf of a nationwide class and state subclasses for breach of express and implied warranties; violation of the Magnusson-Moss Warranty Act, 15 U.S.C. 2301, *et seq*.; negligent misrepresentation; and violations of Massachusetts, Florida, and Illinois state consumer protection statutes.  [ECF No. 1.]  Plaintiffs' Complaint alleges that the engine electric coolant pump (herein, "Coolant Pump" or "Water Pump") installed in the Class Vehicles is defective and often fails well before any maintenance should be necessary.  Plaintiffs contend that this failure subjects Class Vehicle engines to overheating, coolant loss, and on rare occasion, engine damage.  Plaintiffs' further contend that the defect put consumer's safety at risk, exposed them to significant monetary losses, and that BMW concealed this information and represented that the Class Vehicles were safe, reliable, and fully protected.

BMW denies that the Class Vehicles are defective and has maintained that the Coolant Pump and its components function and were properly designed and manufactured without any resulting safety issues.  BMW also denied applicable warranties were breached, nor applicable state law consumer statues or common law duties violated.  Finally, BMW also maintained that the durational limits of the warranties are enforceable.

On March 18, 2018, BMW filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

Starting in April 2019, the parties began extensive settlement negotiations, including the exchange of fulsome discovery and attendance at private mediation sessions with mediator Dennis M. Cavanuagh, U.S.D.J. (Ret.).  Following what are described as "extensive, vigorous discussions and arm's length negotiations, together with numerous exchanges of information and settlement proposals," the parties were able to reach an agreement on the substantive terms of a settlement.  Thereafter, additional mediation sessions were held with the Court to attempt to resolve the question of attorney's fees, which was eventually also resolved.

## II.    OVERVIEW OF THE SETTLEMENT AGREEMENT

On or about July 14, 2020, the parties executed the Settlement Agreement.  (*See* Declaration of Gary S. Graifman, Esq., ¶ 2, Ex. 1.)   The pertinent terms of the Agreement are the following[4]:

- ***Extended Warranty Program for Future Repairs***.  The Agreement calls for BMW to extend the warranty for the Coolant Pump on Settlement Class Vehicles from 4 years/50,000 miles to 7 years/84,000 miles, whichever occurs first, subject to BMW's New Passenger Limited Warranty.  If a Class Vehicle's original electric engine Coolant Pump, or a BMW-approved Coolant Pump fails during the Extended Warranty Period, it will be replaced under the warranty.  This Extended Warranty accounts for an increase in warranty duration by approximately 75% and the mileage limitation is increased by approximately 68%.

- ***Reimbursement Program for Past Repairs***. BMW will also reimburse the Settlement Class Members who are current or past owners or lessees of a Settlement Class Vehicle up to $1,000 in total costs previously incurred for replacements relating to the Coolant Pump and engine coolant thermostat.

- ***Replacement of Failing Pump within 1 Year of the Effective Date of the Settlement***.  The replacement of any original engine electric coolant pump or

---

[4] These are general descriptions of the settlement terms.  To the extent they are not completely consistent with the written terms of the agreement or in any way conflict, the actual Agreement controls.

BMW-approved replacement engine electric coolant pump installed at a BMW Center which fails within one (1) year from the Effective Date (regardless of vehicle age or mileage), subject to the terms and conditions of the BMW New Passenger Limited Warranty.

- ***Costs Borne by BMW***.  BMW agreed to pay the costs of Class notice and claims administration without any reduction in benefits to Settlement Class Members.

## III.   CERTIFICATION OF THE CLASS & PRELIMINARY APPROVAL

By Order dated August 21, 2020, this Court certified a settlement class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and, (1) found that the settlement is preliminarily approved as fair and reasonable; (2) designated Plaintiffs as class representatives; (3) appointed Kantrowitz, Holdhammer & Graifman, P.C. and Thomas P. Sobran, Esq., as Class Counsel; (4) approved the form and manner of notice to be given to the class, including a deadline for class members to submit objections; and (5) scheduled a Fairness Hearing.  *(See ECF No. 30.)*  The class was defined as:

All current (as of the Effective Date) and former owners and lessees in the United States of certain of the following U.S.-specification BMW vehicles registered and operated in the United States, the District of Columbia, and Puerto Rico[5] [6]

*(Id.)*

The Class includes approximately 656,687 Class Vehicles.  (Joint Declaration, ¶ 6.) Because the Class would include multiple generations of vehicle owners, the total number of noticed Class Members were 1,836,068.  *(Id.)*  Notice of the settlement was provided to all class members who were given a chance to submit objections and/or opt-out of the settlement. Apparently 49 class members requested to opt-out of the settlement, and 32 objections were received.  *(Id.)*

---

[5] The U.S.-Specification BMW vehicles are those set forth in the table appearing at pages 2-3 of this Opinion and having been ascribed the short-hand "Class Vehicles."

[6] The Class was defined to exclude Defendants, Defendant's employees, officers, and a host of other Defendant-related entities and individuals.  (*See* Order ¶ 4.)

On December 2, 2020, Plaintiffs' filed a motion for attorney's fees and an award of expenses.  [ECF No. 34-1.]  On January 25, 2021, Plaintiffs filed a Motion for Final Approval of the Settlement Agreement.  [ECF No. 71.]  No opposition to either motion was filed.  Also, on January 25, Plaintiff filed a brief responding to the objections submitted.  [ECF No. 71.]

On February 18, 2021, a Fairness Hearing was held pursuant to Federal Rule of Civil Procedure 23(e)(2).  Appearing were counsel for the parties, as well as one Class Member with an objection to the settlement, Mr. John Olenburger.  The Court reserved decision in anticipation of providing this written decision.

## IV.  <u>APPROVAL OF CLASS ACTION SETTLEMENTS</u>[7]

Under Rule 23, a court may only approve a class settlement after it has held a hearing and determined that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The

---

[7] To certify a class, there are four requirements - (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.  *See In Re Cmty Bank of NA*, 418 F.3d 277, 302 (3d Cir. 2015).  In addition, the claims of the claims must predominate over that of any individual and the concept of a class action must be superior to other available methods.  *See Achem Prods. v. Windsor*, 521 U.S. 591, 592-93 (1997).  As stated, the Court has already preliminarily certified the class pursuant to Rules 23(a), and (b)(3).  There is no serious disagreement or meritorious objection to final certification of the class.

<u>First</u>, there are over 600,000 vehicles and more than a million noticed class members, satisfying the numerosity requirement, *see Warfin Sodium*, 391 F.3d at 527.  <u>Second</u>, the commonality requirement is easily satisfied because all of the class members claim contain overlapping and common questions of law and fact; specifically, e.g., whether the Coolant Pumps are defective, *see Reyes v. NetDeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (single common issue sufficient for commonality).  <u>Third</u>, typicality is satisfied because the named Plaintiffs all own or lease Class Vehicles with the same alleged defect as the class, *see Newton v. Merrill Lynch, Pierce, Fenner & Smith*, 259 F.3d 154, 183-84 (3d Cir. 2001).  <u>Fourth</u>, the adequacy requirement is satisfied because the named plaintiffs are aligned with the class and class counsel are renowned litigators in this area, *see In re General Motors*, 55 F.3d at 800.  Finally, the class claims clearly predominate over any individual issues, as all the claims and theories are essentially the same; likewise, proceeding with perhaps a million individual cases is plainly not superior to a class action.  As such, Rule 23 is satisfied, and the preliminary class certification is hereby deemed final.

fairness of a class action settlement is most commonly evaluated by consideration of the factors

found in *Girsch v. Jepson*, 521 F.2d 153 (3d Cir. 1975):

> 1) the complexity, expense and likely duration of the litigation
> . . . ; (2) the reaction of the class to the settlement . . . ; (3) the
> stage of the proceedings and the amount of discovery
> completed . . . ; (4) the risks of establishing liability . . . ; (5) the
> risks of establishing damages . . . ; (6) the risks of maintaining the
> class action through the trial . . . ; (7) the ability of the defendants
> to withstand a greater judgment; (8) the range of reasonableness
> of the settlement fund in light of the best possible recovery . . . ;
> (9) the range of reasonableness of the settlement fund to a
> possible recovery in light of all the attendant risks of litigation.

The *Girsch* factors are a guide and the absence of one or more does not automatically

render the settlement unfair.  *See In re Am. Family Enter.*, 256 B.R. 377, 418 (D.N.J. 2000).  The

Court must look at all the circumstances of the case and determine whether the settlement is

within the range of reasonableness.  *See In re AT&T Corp. Secs. Litig.*, 455 F.3d 160 (3d Cir.

2006).  In addition, a district court should consider whether the settlement is proposed by

experienced counsel who reached the agreed-upon terms through arms-length bargaining.  *See In

re Warfain Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).  Settlement of litigation is

generally favored by courts, especially in the class action setting.  "The law favors settlement,

particularly in class actions and other complex cases where substantial judicial resources can be

conserved by avoiding formal litigation."  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank

Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *see also In re Warfain*, 391 F.3d at 535

(noting the "overriding public interest in settling class action litigation").  At the same time, the

district court functions as "a fiduciary who must serve as a guardian of the rights of absent class

members" by ensuring that the proposed settlement is fair, reasonable, and adequate."  *In re

General Motors*, 55 F.3d at 785.  In sum, the Court's evaluation of the settlement is guided by

the *Girsch* factors, but the Court is "free to consider other relevant considerations and tacts

involved in the settlement." *Colon v. Passaic County*, No. 08-4439, 2012 WL 1457764, at *2 (D.N.J. Apr. 24, 2012).

## V.    APPLICATION OF THE GIRSCH FACTORS

### 1.    Complexity, Expense, and Likely Duration of the Litigation

This factor is intended to "capture 'the probable cost, in both time and money, of continued litigation.'" *In re General Motors*, 55 F.3d at 812 (quoting *Bryan v. PPG Indus.*, 494 F.2d 799, 801 (3d Cir. 1974)). Where the complexity, expense, and duration of litigation are significant, the Court will view this factor as favoring settlement. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 536 (D.N.J. 1997) ("*Prudential I*").

If this action were to continue, the parties would expend significant time and money pursuing and defending the claims. At the time the parties began settlement discussions and mediation, there was a motion for judgment on the pleadings pending. Class-related depositions and discovery had not commenced yet. If the action survived the motion to dismiss, there would much to do, including expensive and time-consuming discovery, depositions, additional expert discovery and perhaps summary judgment motion practice. And after all that, if the case survived summary judgment, a trial, probably years from now. While the parties were able to exchange information and involve experts with respect to the coolant system issues, continuing the case would undoubtedly require expensive additional expert work into preparing the case on a class wide basis, covering many model number cars over a span of years. By reaching a settlement now, the parties avoid the costs and risks of a lengthy process and trial. *See, e.g.*, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). In addition, if the case proceeds, the Class Vehicles mileage will continue to grow, warranties will expire, and the

claims will remain unresolved.  Considering these uncertainties, settlement makes eminent sense.
The factor weighs in favor of approving the settlement.

> ## 2.  <u>Reaction of the Class</u>

The second *Girsch* factor evaluates whether members of the class generally support or
object to the settlement.  *See In re General Motors*, 55 F.3d at 812.  In order to properly evaluate
the settlement, "the number and vociferousness of the objectors" must be examined.  *Id*.
Generally, "silence constitutes tacit consent to the settlement."  *Id*.

Here, there are 656,687 Class Vehicles.  (Graifman Dec., ¶ 6; Joint Br. 24.)  Because
vehicles can go through multiple owners, the total number of noticed class members is
1,836,068.  (*Id*.)  Out of that large number of class members, there have been 49 requests to opt-
out of the settlement and 32 objections.  This represents a very small number of Class Members,
approximately 0.0017% for objections and only 0.0027% for opt-outs.  (*See id.*)  Based on these
numbers, it would appear more than 99% of the Class Members support the settlement.  *See Bell
Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993).  Thus, the class reaction to the
settlement appears to be extremely positive and favorable overall.

As stated, a small number of objections to the settlement were received.  In response,
Plaintiffs submitted a brief to address the objections.  (*See* ECF No. 71.) The brief and
accompanying declaration group and summarize the objections by subject matter and/or concern.
(*See* Pl.'s Brief in Response to Objections ("PBRO") at 1 n.2 & 2 n. 2-4; *see also* Joint
Declaration of Gary S. Graifman, Esq., and Thomas P. Sobran, Esq. ("Joint Declaration"), Ex.
2.)  In addition to the written objections, at the Fairness Hearing, Class Member Mr. John

Olenburger appeared and placed his objection and the reasons for it on the Record.[8]  The Court

will address each category of Objections in turn below.

>    (i)    **Objections to 7 year/84,000-mile limitation**

The settlement provides for an automatic 100% repair, up to $1,000, for any repair or

replacement of the Coolant Pump up to 7 years or 84,000 miles from the in-service date of a

Class Vehicle.  Most of the objections received -- approximately 25 -- object to the year and/or

mileage numbers as insufficient because they contend their Coolant Pump may not expire until

some time after they hit either the year or mileage limitation.

Settlement agreements are contracts that result from negotiated compromise.  That a class

member would have requested different terms does not render the settlement unreasonable.

Rather, the Court "must determine whether the compromises reflected in the settlement . . .

are fair, reasonable, and adequate when considered from the perspective of the class."  *In re

Baby Product Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013).  Perhaps not surprisingly,

Court have repeatedly approved automotive class settlements with similar year and mileage

restrictions – noting that a line must be drawn somewhere and that is generally left to the good

faith negotiation of the parties.  *See, e.g.*, *Yaeger v. Subaru of Am., Inc.*, 2016 WL 4541861, at

*17 (D.N.J. Aug. 31, 2016) ("Like any compromise, a case could be made for the longer

warranty period advocated by these objectors, or for the status quo that [defendant] might

achieve if the settlement were rejected and it ultimately prevails on its legal and factual

arguments. . . . Of course, for those in aggravated situations there was the opportunity

to opt out of this class and to pursue one's own remedies. That the proposed settlement does not

provide a second 100,000 mile warranty upon the remedial parts is not reason for this Court to

---

[8] *See* Transcript of Fairness Hearing, dated February 18, 2021, at 33:3-36:21.

reject it."); *Skeen v. BMW of North America,* 2016 WL 4033969, at *9 (D.N.J. July 26, 2016)

("The Court agrees with Plaintiffs [ ] that the Court's job is 'not to determine whether the

settlement is the fairest possible resolution.' . . . With regard to the amount of relief offered

under the settlement and the Class members receiving that relief, 'lines must be drawn

somewhere.' . . . [Plaintiff] does not convince the Court that the seven-year warranty provided by

the settlement, though perhaps not the fairest possible resolution, is unreasonable.") (citations

omitted); *Henderson v. Volvo Cars of N. Am., LLC*, 2013 WL 1192479, at *8 (D.N.J. Mar. 22,

2013) (approving settlement where objectors contested the 8 years/100,000 mile cut-off for

obtaining reimbursements as arbitrary).

Nothing persuasive at all has been put before the Court to show that the year and mileage

restrictions negotiated here are in any way inadequate or unfair, or the result of anything other

than good faith negotiation between counsel with expansive experience in this practice area.  *See*

*Seifi v. Mercedes-Benz USA, LLC*, 2015 WL 12964340, at *2-4 (N.D. Cal. Aug. 18, 2015)

("'Age and mileage limitations are common in automotive defect cases, and reflect

manufacturers' strong arguments that vehicles ordinarily fail after a number of years or miles due

to wear and tear.' . . . The Court also finds this Settlement is similar to other approved

automotive class action settlements, which overruled the same types of objections. . . .

Time/mileage limitations are inherent to automotive settlements that are regularly approved by

courts, and the limitations here represent a compromise that was negotiated at arms'-length

through a venerated mediator by experienced counsel after extensive discovery and consultation

with their experts.").  That certain objectors would want additional miles or additional years does

not mean that the resolution reached is unreasonable; instead, it is the product of negotiation.

Counsel has experience in this area and the settlement of this case was achieved with the heavy

involvement, assistance, and supervision of a retired United States District Judge.  The time and mileage objections submitted are not persuasive.

**(ii)    <u>Additional Objections</u>**

The mileage/warranty objections constitute most objections received.  Certain other individual objections were received, which are addressed below.

<u>**First**</u>, an objection was received that insufficient discovery had occurred in the case. While the amount of discovery completed is a legitimate question to examine in class actions, that does not weigh against the settlement here.  Plaintiffs' counsel, Mr. Sobran, notes that a "factory-trained Volvo, Honda, BMW, Mercedes-Benz and Porsche automotive technician and service manager . . . performed an extensive tear-down of the engine Coolant Pump Components."  (PBRO at 20.)  Mr. Sobran "possesses extensive knowledge of vehicle-component design and manufacture together with assembly, test and repair procedures; as well as possessing extensive experience in automotive engine blueprinting and race preparation including designing, machining/fabricating automotive components; and experience with extensive motor vehicle modification and race preparation, including turbocharging and internal engine components."  (*Id*.)  This type of experienced counsel and this type of task supersedes and in fact surpasses any routine discovery that might have occurred in the case had it settled at a later date.

<u>**Second**</u>, the Objection that there is an intra-class conflict is ineffective.  In short, one objector, Mr. Lang, appears to contend the settlement is not fair and reasonable, and the claims of the class are not typical of one another because different people drive different amounts and there are differences between high mileage and low mileage drivers.  The Court disagrees.  Class Member claims do not need to be identical to be typical.  *See Baby Neal v. Casey*, 43 F.3d 48, 57

(3d Cir. 1994). So long as the complained of conduct is the same, the claims of the class are considered typical. *See id.* Here, Plaintiffs' claims – both of those of the Lead Plaintiff and the Class – are based on the same legal theory and do not involve factual differences. As a result, there is no conflict that would impact the typicality of the class or the fairness of the settlement. That some members of the class have driven their cars without issue and thus will receive no tangible benefit from the settlement does not make the settlement unfair or unreasonable at all.

**Third**, Mr. Olenburger appeared at the hearing and requested modification of certain language within the Settlement Agreement. In his view, the language of the Settlement Agreement referring to the provision that provides for a free repair within one year of the Effective Date is vague and could be construed as within a year prior to - or within a year after - the date. (Tr: 34:17-35:11.) While the Court understands the position, the papers and Agreement, read in complete context, make clear that the purpose of the provision is prospective relief and to ensure that no Class Member is prejudiced by any delay in final resolution of this case. Moreover, the Court sees no prejudice or harm to the class that would result no matter how the provision is construed. This objection does not make the settlement unreasonable or unfair.[9]

In sum, none of the Objections filed cause the Court to find that the settlement is unfair or unreasonable.

### 3.   The Stage of the Proceedings and the Amount of Discovery Completed

The third *Girsh* factor requires that the Court consider the "degree of case development that Class Counsel have accomplished prior to Settlement," including the type and amount of discovery already undertaken. *In re General Motors*, 55 F.3d at 813. Under this factor, the Court considers whether the amount of discovery completed in the case has permitted "counsel

---

[9] Some objections vaguely refer to the amount of attorney's fees agreed to in the Settlement. This will be addressed in the Attorney's Fees section, *infra*.

[to have] an adequate appreciation of the merits of the case before negotiating." *In re Schering–Plough/Merck Merger Litig.,* No. 09–1099, 2010 U.S. Dist. LEXIS 29121 at *30 (Mar. 26, 2010). The discovery analyzed encompasses both formal and "informal" discovery, including discovery from parallel proceedings, companion cases and even third parties, such as experts or witnesses. *Id.*

Here, there has been substantial informal and expert discovery conducted into the Class Vehicles and claims at issue. While formal class discovery did not proceed in-depth, that does not mean that the lawyers did not have a deep understanding of the claims at issue and the best path to resolve them. Indeed, as the Third Circuit has explained, early settlement is often beneficial:

> [The] Third Circuit recognized that early settlements could maximize the value for class members while adhering to class action requirements. That court noted that a class member was better able to gauge his or her individual benefit to being a member of the class when a settlement offer accompanied the certification notice. The court also stated that a proposed settlement does not foreclose a class member's opportunity to challenge the adequacy of the class representation. The Third Circuit seemed to stress that to accomplish an early settlement of a class action, a district court must adhere to the strictures of Rule 23 of the Federal Rules of Civil Procedure in the course of certification and settlement.

*Weiss v. Mercedes-Benz of N.A.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995).

As an automotive case, where the Class Vehicles remain on the road and subject to being driven and the mileage increasing, it makes sense to settle this case now – securing an immediate and tangible benefit to the class. This factor supports the settlement

**4 & 5.  <u>The Risk of Establishing Liability and Damages</u>**

The fourth and fifth *Girsch* factors are commonly analyzed together. *See, e.g., McCoy v. Healthnet, Inc.*, 569 F. Supp. 2d 448, 461 (D.N.J. 2008). These factors survey the "possible risks of litigation by balancing the likelihood of success . . . against the immediate benefits offered by

14

settlement." *Prudential II*, 148 F.3d at 319.  Where the risks of litigation are high, these factors weigh in favor of the settlement.  *See id*.  To properly weigh these considerations, the Court should rely to a certain extent on the estimation provided by class counsel, who is experienced with the intricacies of the underlying case.  *See Weber v. Gov't Empls. Ins. Co.*, 262 F.R.D. 431, 445 (D.N.J. 2009) (quoting *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 115 (E.D. Pa. 2005)).

When the risk of establishing liability in this case is balanced against the benefit resulting from the Settlement Agreement, it is clear these factors weigh heavily in favor of settlement. BMW heavily disputes liability in this case.  Plaintiffs obviously believe in their strength of their case as well.  However, at the time the case began the mediation process, a dispositive motion that could have ended or dramatically circumscribed the case was pending.  So, there is palpable risk in proceeding.  Moreover, even if the case advanced past the Rule 12 motion, it would still likely need to defeat summary judgment and perhaps prevail at a trial.  In other words, there is much risk and a long road to establish liability in this case.  This factor weighs in favor of settlement.

### 6.   The Risk of Maintaining the Class Through Trial

The sixth *Girsch* factor "measures the likelihood of obtaining and keeping class certification if the action were to proceed to trial." *In re Warfain*, 391 F.3d at 538.  Nevertheless, it should be noted that this consolidated class action is comprised of many claims, including state law claims from different states, as well as subclasses.   Class certification can always be modified at any time before final judgment.  Fed.R. Civ. P. 23(c)(1)(C).  While the Court believes the action would likely remain as a class action, there is the possibility that the class

could be decertified or procedural problems managing the class could arise.  This factor is neutral.

### 7.      The Ability of Defendants to Withstand a Greater Judgment

The seventh *Girsch* factor is "concerned with whether the defendants could withstand a judgment for an amount significantly greater than the settlement."  *In re Cendant*, 264 F.3d 201, 244 (3d Cir. 2001).  The parties agree that BMW has ample resources.  However, many courts have noted that a defendant could pay a greater sum does not mean that the settlement is unfair or unreasonable – rather, it means that this factor is likely neutral.  *See, e.g.*, *Bredbenner v. Liberty Travel*, 2011 WL 1344745, at *15 (D.N.J. Apr. 8, 2011) ("courts in this district regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts"); *In re CertainTeed Corp. Roofing Shingle Prods. Liability Litig.*, 269 F.R.D. 468, 489 (E.D. Pa. 2010) ("because ability to pay was not an issue in settlement negotiations, the factor is neutral").  This factor is neutral.

### 8 & 9.  The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Risks of Litigation

The final two *Girsch* factors collectively "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin*, 391 F.3d at 538. To make this determination, the Court analyzes the reasonableness of the settlement against the best possible recovery and the risks the parties would face if the case went to trial. *Prudential II*, 148 F.3d at 322.

Here, the risks of litigation are substantial, as discussed, *supra* in factors 4 and 5.  On the other hand, the recovery provides legitimate and immediate benefits to the class members.  They are entitled to an immediate reimbursement of $1,000, with certain conditions.  In addition, their warranty is being extended and the Coolant Pump can be replaced at no cost to the Class

16

Member.  This type of arrangement is somewhat common in the automotive practice, and has been held reasonable by several courts, including Courts with similar BMW cases securing less robust recovery for Class Members.  *See Herremans v. BMW*, 14-2363-GW (C.D. Cal.) (approving BMW pump-related settlement at 7 years/84,000 miles and *$500* reimbursement) (attached to Joint Declaration at Ex. 3); *see also Sadowska v. Volkswagen Group of America, Inc.*, 2013 WL 9600948, at *3 (C.D. Cal. Sept. 25, 2013).  These factors weigh in favor of the settlement.

**10.**   **Additional Considerations**

   **(i)**   **Class Counsel**

In addition to the *Girsch* factors, courts in this Circuit traditionally "attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class." *Austin*, 876 F. Supp. at 1472.  As the Third Circuit has noted, "[c]lass counsel's duty to the class as a whole frequently diverges from the opinion of either the named plaintiff or other objectors." *Walsh v. Great Atl. & Pac. Tea Co.,* 726 F.2d 956, 964 (3d Cir. 1983) (affirming district court decision denying named plaintiff's motion to dismiss class counsel, denying motion to appoint additional counsel for objectors, and approving settlement over objections from named plaintiff).

Here, Class Counsel are highly skilled attorneys, especially in this area of the law.  Their opinions carry persuasive weight.  *See Prudential I*, 962 F. Supp. at 543 ("the Court credits the judgment of Plaintiff's counsel, all of whom are active, respected, and accomplished in this type of litigation").  Class Counsel's accomplishments in this area include:

> Lead Counsel and Executive Committee member, respectively, in the *In re Volkswagen Timing Chain Prod. Liab. Litig*., litigated in the District of New Jersey and settled on a nationwide basis. The settlement in that matter involved approximately 477,000 Volkswagen and Audi vehicles (less than the number involved herein). The settlement claims history there, to date, has resulted in approximately $21.5 million in paid claims.

> That does not include the warranty extension program there which, like the program here, includes post-effective date repairs.
>
> . . . [and]
>
> Class Counsel herein were recently co-lead counsel in another automotive products liability case also involving defective engine coolant pumps in approximately 874,781 Volkswagen and Audi class vehicles. The claims in that matter numbered in excess of 27,000. Final Approval was granted on June 10, 2020 and the attorneys fee approved by the court was $2.4 Million.

(Joint Declaration in Support of Attorney's Fee Award, ¶¶ 29-30; ECF 34-2.)  Class Counsel's recommendation provides further support for approving the settlement.

### (ii)   The Settlement Negotiations Were Overseen by a Mediator

In this case, the parties also benefitted from the involvement of the Honorable Dennis M. Cavanaugh, U.S.D.J. (Ret.) in mediating the Settlement.  The participation of an independent mediator in settlement negotiations "virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties."  *Bredbenner v. Liberty Travel, Inc.*, 09-905, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011); *Kolar v. Rite Aid Corp.*, No. 01-cv-1229, 2003 WL 1257272, at *3 (E.D. Pa. Mar. 11, 2003) (noting that involvement of third party in settlement process "provides a great deal of comfort at the threshold of our fairness consideration").

## VII.   ATTORNEY'S FEES

The Settlement Agreement also provides that Defendants will pay Plaintiffs' Class Counsel $900,000 in attorney's fees and costs as part of the settlement.  Plaintiffs' Counsel has made a separate motion for the approval of the fee amount.  In addition, the motion seeks service awards in the amount of $1,000 to each of the three named class representatives.  This award of attorneys' fees and costs is separate and apart from the relief available to the Class and, thus, will not reduce the relief to the Class in any manner.

18

The award of attorneys' fees in a class action settlement is within the Court's discretion. *Rossi v. Procter & Gamble Co.*, 2013 WL 5523098, at *9 (D.N.J. Oct. 3, 2013). Traditionally, courts consider the factors set forth in *Gunter v. Ridgewood Energy Corp.*: (1) the number of persons benefitted; (2) the presence or absence of substantial objections to the settlement; (3) the skill and efficiency of counsel; (4) complexity and duration of the litigation; (5) undertaking the risk of nonpayment; (6) the amount of time devoted to the litigation; (7) awards in similar cases. 223 F.3d 190, 195 n.1 (3d Cir. 2000). At the same time, the Supreme Court has recognized a preference of allowing litigants to resolve fee issues through agreement. *Hensley v. Eckhart*, 461 U.S. 424, 437 (1983).

In this district, courts routinely approve agreed-upon attorney's fees when the amount is independent from the class recovery and does not diminish the benefit to the class. *See Mirakay v. Dakota Growers Pasta Co., Inc.*, 2014 WL 5358987, at *11 (D.N.J. Oct. 20, 2014); *Rossi*, 2013 WL 5523098, at *9; *Pro v. Hertz Equipment Rental Corp.*, 2013 WL 3167736, at *6 (D.N.J. June 20, 2013); *In re LG/Zenith Rear Projection Television Class Action Litigation*, 2009 WL 455513, at *8 (D.N.J. Feb. 18, 2009). Where the attorneys' fees are paid independent of the award to the class, the Court's fiduciary role in overseeing the award is greatly reduced because there is no potential conflict between the attorneys and class members. *Mirakay*, 2014 WL 5358987, at *11; *Rossi,* 2013 WL 5523098, at *9 (citing McBean v. City of New York, 233 F.R.D. 377, 392 (S.D.N.Y. 2006)). "While the Court is not bound by the agreement between the parties, the fact that the award was the product of arms-length negotiations weighs strongly in favor of approval." *Rossi*, 2013 WL 5523098, at *10. "[T]he benefit of a fee negotiated by the parties at arm's length is that it is essentially a market-set price—[Defendants] ha[ve] an interest

in minimizing the fee and Class Counsel have an interest in maximizing the fee to compensate themselves for their work and assumption of risk." *Id*.

Here, the negotiated attorney and expense award is reasonable, as all of the *Gunter* factors weigh in favoring of approving the fee award in this case.

Initially, the fee award was negotiated at arms' length between the parties and has no impact on the recovery to the class. This is not a common fund case, and the Class recovery will be precisely the same regardless of the amount of the fee award. Turning to the *Gunter* factors:

*Gunter Factor 1.* Many class members are benefitted, as evidenced by the extended warranty on all Class Vehicles – more than 600,000 in total - and the reimbursement of costs.

*Gunter Factor 2.* There have been 49 requests to opt-out of the settlement and 32 objections. This represents a very small number of Class Members, approximately 0.0017% for objections and only 0.0027% for opt-outs. (*See id.*) Based on these numbers, it would appear more than 99% of the Class Members support the settlement. Thus, the response of the class has been very positive.

*Gunter Factor 3.* All counsel have done an excellent job in the case. The case was hard fought. The Undersigned has case managed the case since inception and has personally observed the efforts of counsel to prosecute and defend their positions. Class Counsel has repeatedly shown, in this case and others like it, a proficiency in litigating automotive class actions that are not only adequate but extremely beneficial to the class. *See, e.g.*, *In re AremisSoft Corp. Sec. Litig.,* 210 F.R.D. 109, 132 (D.N.J. 2002) ("the single clearest factor reflecting the quality of the class counsels' services to the class are the results obtained").

*Gunter Factor 4.*  The complexity and duration of the litigation would have been substantial absent the settlement.  Plaintiffs' claims faced legal hurdles and years of uncertainty; instead, Class Counsel brought in a settlement that provides tangible benefits to the Class now.

*Gunter Factor 5.*  The risk of non-payment was high.  Class Counsel took the case on a full contingency.  If Plaintiff did not prevail, Class Counsel would have received nothing. *In re Schering-Plough Corp. Enhance ERISA Litig.,* 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) ("Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval.").

*Gunter Factor 6.*  The amount of time devoted by counsel was substantial.  The case is four years old.  The case was litigated, proceeded to mediation, and was case managed by the Undersigned.  Counsel represents that approximately 600 hours of time were put into this case. (*See* Graifman Decl., ¶¶ 3-5; Sobran Decl., ¶¶ 5-6.)  The papers detail this time at length.  (*See* Brief in Support of Attorney's Fees at pp. 22-25.)  Moreover, it does not account for time that has been spent addressing issues with the settlement, preparing for and attending the Fairness Hearing, and tending to the settlement and Class questions following resolution.

*Gunter Factor 7.*  As for the last *Gunter* factor, the $900,000.00 award requested is less than amounts that have been awarded in comparable cases.  *See In re Volkswagen Timing Chain Product Liability Litigation,* Civil Action No. 16-2765-JLL (D.N.J.) (awarding attorneys' fees of $8.6 million); *Coffeng v. Volkswagen Group of America*, Inc., Civil Action No. 2:17-cv-01825-JD (N.D.Cal.) (approving award of $2.4 million in water pump defect class action settlement).

In sum, the Court finds that the fee award was negotiated between the parties and does not diminish the benefits to the Class.  It was an amount commensurate with the time and effort expended; the experience of counsel; the risks of continuing with the litigation; and awards in

other cases.  As a result, the Court finds the fee and expense award requested fair and reasonable

under the circumstances.[10]

**<u>CONCLUSION</u>**

Based on all of the reasons set forth above, the motion for approval of settlement

[CM/ECF No. 34] is **GRANTED**, and the motion for an award of fees, expenses and services

awards [ECF No. 71] is **GRANTED**.  The Court hereby **approves** the parties' Settlement

Agreement and **grants** Class Counsel's request for $900,000 in attorneys' fees and expenses, as

well as the request for a $1,000 incentive awards to the three named Plaintiffs.


s/Mark Falk_____
**MARK FALK**
**Chief U.S. Magistrate Judge**


**DATED: March 8, 2021**

---

[10] Plaintiff also seeks approval of "incentive awards" to the three named plaintiffs in the amount of $1,000 each.  An incentive/participation award has been recognized as compensation for the lead plaintiff's role in bringing litigation on behalf of those who might otherwise have been unable or unwilling to do so. *See, e.g., Cook v. Neidert*, 142 F.3d 1004, 1016 (7th Cir. 2000). "Incentive awards are not uncommon in class action cases and are within the discretion of the court." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).  Plaintiffs provided information to counsel and assisted with preparation of the case. They also prepared for depositions, even though they were later canceled.  The amount of the service awards are relatively small given the size of the case; moreover, the awards were negotiated separately from the relief to the class, which will not be diminished by the allowing of the service awards.  For those reasons, the service awards are approved.